**Leslie RICH, Appellant,**

v.

**Laslo OLAH and Magdolna Olah, Appellees.**

**No. 05–07–00153–CV.**

Court of Appeals of Texas, Dallas.

Dec. 5, 2008.

---

36. *Id.*

37. *Id.*

Richard B. Phillips and Jack Balderson, Jr., Thompson & Knight L.L.P., Dallas, for Appellant.

Larry R. Boyd, Abernathy, Roeder, Boyd & Joplin, P.C., McKinney, for Appellees.

Before Justices MORRIS, WRIGHT, and MOSELEY.

## OPINION

Opinion by Justice MOSELEY.

Unhappy with their purchase of a house, Laslo and Magdolna Olah sued the seller, Leslie Rich, alleging violations of the Deceptive Trade Practices–Consumer Protection Act ("DTPA"), statutory and common-law fraud, and negligent misrepresentation relating to the transaction. Rich answered and filed a counterclaim for attorneys' fees under the terms of the sales contract. After a bench trial, the trial court rendered judgment that the Olahs take nothing on their claims against Rich; that Rich take nothing on her claim for attorneys' fees against the Olahs; and that Rich recover her court costs from the Olahs. The trial court filed findings of fact and conclusions of law.

Rich appealed, complaining in a single issue the trial court erred in denying her claim for attorneys' fees. The Olahs filed a cross-appeal; in two issues they argue the trial court erred in refusing to file additional requested findings of fact and the evidence is legally and factually insufficient to support the take-nothing judgment on their claims. For the reasons set forth herein, we sustain Rich's issue and deny the Olahs' issues. We reverse that portion of the trial court's judgment relating to Rich's claim for attorneys fees and render judgment in her favor on that claim. We otherwise affirm the trial court's judgment.

## BACKGROUND

Foundation repairs were made on the house involved in this matter in 1999, shortly before Rich purchased it. The 1999 repairs involved the installation of piers on one side of the foundation; the repairs were covered by a lifetime transferable warranty from Certified Foundation Specialists. In October 2002, Rich was planning on selling the house and had an inspection done by Robert Blakey of Certified. He determined the 1999 repairs were working as intended and that adjusting the piers would not solve the new symptoms (cracks in the walls and kitchen tiles).

Rich later prepared a seller's disclosure notice (Notice) indicating the house had had previous foundation repairs, with a transferable warranty, but that she was not aware of any soil movement or settling or of the need for additional repairs. After viewing the house a few times and receiving a copy of the Notice, the Olahs signed a contract of sale for the house with Rich on February 11, 2003. The Olahs had the house inspected by a home inspector; his report identified cracks in exterior and interior walls and in the kitchen tiles. The report indicated the 1999 foundation repairs, that the foundation had been reinspected since the repairs, and that the foundation appeared normal. Mr. Olah testified that before he bought the house he was aware of the inspection report and of cracked tiles. Before the closing, Mr. Olah asked another foundation company— Cable Lock—to look at the house and decide whether the trees were too close to the foundation. The Cable Lock representative agreed with Mr. Olah the trees were too close to the foundation.

The sale closed on April 22, 2003, and the Olahs moved into the house on July 1, 2003. When they moved in, the Olahs did not notice any issues with the house they had not seen before. A few weeks later, the door to the den started to stick, then the entrance door started to stick and a crack appeared in the living room. They Olahs called Certified and had new piers installed under the foundation, on the oth-

er side of the house from the location of the 1999 foundation repairs. This work was not covered by Certified's warranty for the 1999 work. During the foundation repair, the Olahs also obtained from Certified a diagram of the house from the October 2002 inspection that showed differences in elevation at several points in the house away from the 1999 work. (Rich denied ever seeing the diagram or having knowledge of it before the sale.) In addition to the foundation repairs, the Olahs spent several thousand dollars repairing the house, including sums to remove trees.

The Olahs sued Rich for their repair costs, asserting DTPA violations, common law and statutory fraud, and negligent misrepresentation based on her alleged knowing failure to disclose the October 2002 inspection and Blakey's conclusions from that inspection. Rich counterclaimed for her attorneys' fees based on a provision in the sales contract that "the prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party."

The trial court found, in addition to other facts, the following:

4. [Rich] was not informed by Certified of any necessity for remedial work on the foundation prior to the sale of the home to [the Olahs].

6. The Notice disclosed the 1999 Foundation Repairs but did not disclose the October warranty inspection or the results of that inspection. [Olah] was verbally advised by [Rich] of warranty inspections subsequent to the 1999 Foundation Repairs. [The Olahs] had owned a home previously with foundation issues. [The Olahs] did not consult with Certified before closing on the sale of the property.

15. [Olah] was aware of cracks in the walls, kitchen tile and sticking doors prior to the sale of the property.

16. [Olah] had Cable Lock inspect the home to determine necessity of removal of trees prior to the sale of the property.

17. Cable Lock inspected the interior of the house prior to the sale of the property.

19. Cable Lock advised [Olah] to remove trees from the yard prior to the sale.

The trial court also made findings as to the amounts of repairs the Olahs made to the house and the amounts of the parties' respective reasonable attorneys' fees for trial and appeal. The trial court signed conclusions of law regarding the Olahs' causes of action and the attorneys' fee provision in the contract of sale; one of its conclusions was that the Olahs' claims were not based in contract.

### STANDARD OF REVIEW

Findings of fact entered in a case tried to a court are of the same force and dignity as a jury's verdict on jury questions. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994); *Ashcraft v. Lookadoo,* 952 S.W.2d 907, 910 (Tex.App.-Dallas 1997) (en banc), *pet. denied,* 977 S.W.2d 562 (Tex.1998) (per curiam). We apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996) (per curiam); *Catalina,* 881 S.W.2d at 297. We indulge every reasonable presumption in favor of the findings and judgment of the trial court, and no presumption will be indulged against the validity of the judgment. *Vickery v. Comm'n for Lawyer*

*Discipline,* 5 S.W.3d 241, 252 (Tex.App.-Hous. [14th Dist.] 1999).

■ In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the fact finding, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable persons could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005). To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■■ In a bench trial, the trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given their testimony, may accept or reject all or any part of their testimony, and resolves any conflicts or inconsistencies in the testimony. *LaCroix v. Simpson,* 148 S.W.3d 731, 734 (Tex.App.-Dallas 2004, no pet.). This Court is not a fact finder and we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *See Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).

■ When an appellant complains of the legal sufficiency of the evidence supporting an adverse finding on a matter on which the appellant had the burden of proof, it must show the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). In reviewing a "matter of law" challenge, we first examine the record for evidence supporting the finding, and then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* We sustain the point of error only if the contrary proposition is conclusively established. *Id.*

■ When a party attacks the factual sufficiency of an adverse finding, it must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Id.* We must consider and weigh all of the evidence and can set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

■ Unchallenged findings of fact are binding on the parties and the appellate court. *Employers Cas. Co. v. Henager,* 852 S.W.2d 655, 658 (Tex.App.-Dallas 1993, writ denied). *See Pat Baker Co. v. Wilson,* 971 S.W.2d 447, 450 (Tex.1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error."); *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993) (holding that court of appeals generally cannot reverse for reason that is not assigned as error on appeal); *see also* Tex. R.App. P. 38.1(e).

■ We review the trial court's conclusions of law de novo. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). Incorrect conclusions of law will not require a reversal if the controlling findings of fact will support a correct legal theory. *Sears, Roebuck and Co. v. Nichols,* 819 S.W.2d 900, 903 (Tex.App.-Houston [14th Dist.] 1991, writ denied).

### DISCUSSION

### A. Cross–Appeal

■ We address the Olahs' cross-appeal first because its outcome affects

Rich's appeal concerning her attorneys' fees. The Olahs bring two issues on appeal; those issues, however, are multifarious, ambiguous, and do not track the arguments in their brief.[1] A point of error is multifarious when it generally attacks the trial court's order with numerous arguments. *See Hollifield v. Hollifield*, 925 S.W.2d 153, 155 (Tex.App.-Austin 1996, no writ); *Clancy*, 705 S.W.2d at 823. We may disregard any assignment of error that is multifarious. *See Hollifield*, 925 S.W.2d at 155; *Clancy*, 705 S.W.2d at 824. Alternatively, we may consider a multifarious issue if we can determine, with reasonable certainty, the error about which complaint is made. *See Green v. Kaposta*, 152 S.W.3d 839, 842 n. 2 (Tex.App.-Dallas 2005, no pet.).

 We have reviewed the Olahs' brief, and conclude with reasonable certainty that it presents the following complaints, which we address herein. To the extent the Olahs' issues sought to present additional complaints, we disregard them as multifarious. *See Hollifield*, 925 S.W.2d at 155; *Clancy*, 705 S.W.2d at 824.

### 1. Request for Additional Findings of Fact

The record indicates the Olahs requested findings of fact and conclusions of law after the trial court rendered its judgment. Both Rich and the Olahs prepared proposed findings, but the trial court prepared and signed its own set of findings and conclusions. The Olahs then filed a request for additional specified findings under rule 298. TEX.R. CIV. P. 298. The trial court did not file any additional findings. Under their second issue, the Olahs argue primarily about the trial court's failure to file additional findings of fact as they requested. They argue because the judge who tried the case is now retired and the sitting judge cannot make the additional findings, they are entitled to a new trial.

Rule 298 permits a party to request specific additional or amended findings or conclusions *"after the court files original findings of fact and conclusions of law."* TEX.R. CIV. P. 298 (emphasis added). The Olahs, however, cite authority under rule 296 that a trial court's refusal to file *any* findings of fact or conclusions of law after proper request is error, presumed harmful (unless the record on appeal affirmatively shows no harm), and the remedy is to abate the appeal if the judge is available to make the findings, or to remand for a new trial if not. *See Fed. Deposit Ins. Corp. v. Morris*, 782 S.W.2d 521, 524 (Tex.App.-Dallas 1989, no writ). Here the trial court responded to the request for findings of fact and conclusions of law and filed detailed findings and conclusions. Thus, the

---

1. The first issue states:

The Trial Court erred by (a) disregarding both legally and factually sufficient evidence demonstrating that the Defendant violated her independent duty to disclose to the Plaintiff her knowledge that (1) foundation problems were being experienced in the home, and (2) a foundation inspection was made on October 24, 2002, which identified problems not covered by a warranty on previous foundation repairs; and (b) failing to find that the Defendant's actions of not disclosing the new foundation issues which were not subject to the preexisting warranty constituted both actionable fraud and a DTPA violation.

The second issue states:

The Trial Court erred by (a) disregarding both legally and factually sufficient evidence demonstrating the Defendant violated the [DTPA], committed both common law and statutory fraud, and engaged in negligent misrepresentation, (b) concluding that the Defendant did not commit actionable fraud, statutory fraud or negligent misrepresentation, and (c) implying a finding and conclusion that the Defendant did not violate the DTPA.

situation in *Morris* and similar cases is not before us.

 Rule 298 requires additional findings of fact and conclusions of law only if they relate to "ultimate or controlling issues." *Assoc. Tel. Directory Publishers v. Five D's Publishing Co.*, 849 S.W.2d 894, 901 (Tex.App.-Austin 1993, no writ). An ultimate fact issue is one essential to the cause of action that would have a direct effect on the judgment. *Gen. Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 711 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) ("The controlling issue is whether the circumstance of the particular case would require an appellant to guess the reasons for the trial court's judgment."). A trial court is not required to make additional findings of fact that are unsupported in the record, that are evidentiary, or that are contrary to other previous findings. *Buckeye Ret. Co., L.L.C. v. Bank of Am., N.A.*, 239 S.W.3d 394, 402 (Tex.App.-Dallas 2007, no pet.); *see Rafferty v. Finstad*, 903 S.W.2d 374, 376 (Tex. App.-Houston [1st Dist.] 1995, writ denied) (only necessary finding was ultimate issue—whether division of marital estate was just and right—rather than evidentiary findings as to parties' relative earning capacities, investments of separate property in community residence, or cruelty).

 The Olahs requested additional findings: that Rich knew of the October 2002 inspection and did not provide oral or written notice of that inspection to the Olahs; that she did not attach a copy of the 1999 foundation inspection to the Notice, which prevented the Olahs from determining the identity of the 1999 inspector; and that the sales contract was not an "as is" contract. We conclude these additional requested findings were not on ultimate or controlling issues, but on evidentiary matters or matters contrary to the court's express findings. *See Vickery*, 5 S.W.3d at 254 ("A request for negative findings will rarely apprise the trial court that it has omitted an essential element in its original findings."). The trial court found Rich gave the Olahs verbal notice of additional foundation inspections before the sale, and Mr. Olah testified he probably reviewed a subsequent inspection report from Certified before the sale. There is evidence in the record that the Olahs knew, before they bought the house, that Certified had done the 1999 repair; thus whether the 1999 inspection report was attached to the Notice is immaterial. Finally, the trial court's judgment is not based on an "as is" provision in the contract, and thus that request is also immaterial. We overrule the Olahs' second issue.

### 2. Sufficiency of the Evidence

 Under their first issue the Olahs challenge the legal and factual sufficiency of the evidence to support the trial court's findings and judgment. As stated above, the Olahs had the burden of proof on each of their causes of action and must show the elements necessary to support those causes of action were either conclusively established as a matter of law, or that the trial court's " 'failure to find' [such elements] is against the great weight and preponderance of the evidence." *See Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988); *see also Dow Chem. Co.*, 46 S.W.3d at 241. We will affirm the trial court's take-nothing judgment, unless the evidence conclusively establishes all elements of their causes of action or the failure to find those elements is against the great weight and preponderance of the evidence. Because the trial court filed findings of fact and conclusions of law, the Olahs may challenge those findings as they might a jury verdict. However, unchallenged findings present nothing for review and are binding on the Olahs.

*See Henager,* 852 S.W.2d at 658; *see also Pat Baker Co.,* 971 S.W.2d at 450.

The only fact finding challenged in the Olahs' brief is finding no. 4: "[Rich] was not informed by Certified of any necessity for remedial work on the foundation prior to the sale of the home to [the Olahs]."

The evidence in the record is conflicting about what Blakey told Rich at the October 2002 inspection. Blakey testified he could not remember the specific conversion he had with Rich, and did not remember showing her the diagram he prepared at the 2002 inspection. He said the diagram was marked "file only," which meant he did not proceed with any proposal or any type of report to the homeowner. He described the symptoms he saw as cracked ceramic tile in the kitchen, cracked drywall on the north side of the house, and a sticking door. He testified:

> So when I came out, her question was basically could I do something about these symptoms that she was seeing by adjusting the work that I had previously done to the house. I indicated to her that those piers were doing their intended purpose, and adjusting them at that point was not appropriate and would not help what—the other things that I was seeing. She said okay and promptly dismissed me.

Rich testified she did not know the house needed foundation repair after Blakey's inspection. She denied that Blakey told her she was having foundation problems in the areas away from the 1999 work and that he told her she needed a new foundation.

The parties agree the Olahs were required to prove Rich actually knew the information she allegedly failed to disclose; proof she should have known the information is not enough. *See Prudential Ins. Co. v. Jefferson Assoc., Ltd.,* 896 S.W.2d 156, 162 (Tex.1995) (seller not liable for failing to disclose what he only should have known). The trial court was faced with determining the credibility of the witnesses and resolving the conflicts in the evidence. The court did so in Rich's favor. *See LaCroix,* 148 S.W.3d at 734; *Clancy,* 705 S.W.2d at 826. We cannot disturb the trial court's resolution of those issues.

■ Even so, the unchallenged findings support the trial court's judgment because they show the court failed to find essential elements of the Olahs' causes of action. The Olahs were required to prove a false, misleading, or deceptive practice that they relied on to their detriment and that was a producing cause of their damages. *See* Tex. Bus. & Com.Code Ann. § 17.50(a)(1)(B) (Vernon Supp.2008); *Prudential Ins. Co.,* 896 S.W.2d at 160–61. In addition, to support their "failure to disclose" DTPA claim, they had to prove they would not have entered into the transaction had the information been disclosed. Tex. Bus. & Com.Code Ann. § 17.46(b)(24); *Willowbrook Foods, Inc. v. Grinnell Corp.,* 147 S.W.3d 492, 506 (Tex.App.-San Antonio 2004, pet. denied). Justifiable reliance is also an essential element of their causes of action for fraud, statutory fraud, and negligent misrepresentation. *See* Tex. Bus. & Com.Code Ann. § 27.01(a) (Vernon 2002) (statutory fraud); *Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd.,* 181 S.W.3d 879, 887–88 (Tex.App.-Dallas 2006, no pet.) (discussing elements of fraud and statutory fraud); *see also Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (negligent misrepresentation).

The trial court found, and the Olahs did not challenge, that they were verbally advised by Rich of warranty inspections after the 1999 foundation repairs and that they were aware of cracks in the walls and kitchen tile and of sticking doors prior to

the sale of the house. It is undisputed that despite their knowledge, the Olahs proceeded to close the sale and take possession of the house. Based on these findings, the Olahs could not have justifiably relied to their detriment on Rich's alleged failure to disclose those facts.[2] Because the only challenged finding is supported by evidence and the unchallenged findings of fact indicate the trial court failed to find an essential element of each of the Olahs' causes of action, we overrule their first issue.

## B. Appeal of Denial of Counterclaim

In a single issue, Rich asserts the trial court erred in failing to award her reasonable attorneys' fees under the terms of the real estate contract. That contract, a standard form promulgated by the Texas Real Estate Commission, provided: "The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party." The trial court rendered a take-nothing judgment on Rich's counterclaim for attorneys' fees under this provision and concluded the Olahs' claims "are not based in contract."

 We review the trial court's conclusions of law de novo. *BMC Software,* 83 S.W.3d at 794. Like other legal questions, we review a trial court's construction of an unambiguous contract de novo. *See J.M Davidson, Inc. v. Webster,* 128 S.W.3d 223, 226, 229 (Tex.2003); *MCI Tel. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–651 (Tex.1999).

Having rejected the Olahs' challenge to the take-nothing judgment on their claims against Rich, it is clear that Rich is the prevailing party in this litigation. *See Dear v. City of Irving,* 902 S.W.2d 731, 739 (Tex.App.Austin 1995, writ denied) (prevailing party is one who is vindicated by trial court's judgment). The apparent basis for the trial court's denial of Rich's attorney's fees under the contract was the conclusion of law that the Olahs' claims were "not based in contract." However, we do not read the sales contract provision so narrowly; it provides for an award of attorneys' fees to the "prevailing party in any legal proceeding *related* to this contract." (Emphasis added.) The nature of the Olahs' claims was that they were induced into the contract of sale and purchase of the house by Rich's knowing or negligent failure to disclose material information about the foundation. Thus, although based in tort and statutory causes of action, the litigated claims all relate to the sales contract. *See Robbins v. Capozzi,* 100 S.W.3d 18, 27 (Tex.App.-Tyler 2002, no pet.) (party entitled to recover attorneys' fees for successfully defending fraud and DTPA claims under contract provision for such fees to "[t]he prevailing party in any legal proceeding brought under or with respect to the transaction described in his contract"); *Dickerson v. Trinity–Western Title Co.,* 985 S.W.2d 687, 692 (Tex.App.-Fort Worth 1999, pet. denied) (rejecting argument that fraud and DTPA tort claims were not related to contract for purpose of provision awarding attorneys' fees to "a prevailing party in any legal proceeding brought under or with relation

---

**2.** Rich argues in response that negligent misrepresentation does not apply to a private transaction or to the nondisclosure of information as opposed to an affirmative representation. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 791 (Tex.1999). Assuming without deciding

that such a claim is possible, however, justifiable reliance by the plaintiff is still required. *See Sloane,* 825 S.W.2d at 442 (noting justifiable reliance is an element of negligent misrepresentation). Thus, we need not address Rich's argument.

to" the contract). We conclude the Olahs' lawsuit against Rich is a legal proceeding related to the contract.

The Olahs argue the contract of sale cannot be the basis for their claims because the contract merged into the deed at the closing of the sale. *See Alvarado v. Bolton,* 749 S.W.2d 47, 48 (Tex.1988) (where deed delivered and accepted as performance of contract to convey, contract merges into deed and deed alone determines rights of parties); *ECC Parkway Joint Venture v. Baldwin,* 765 S.W.2d 504, 511–12 (Tex.App.-Dallas 1989, writ denied). We agree the doctrine of merger generally applies to deeds, but it does not apply when the contract was procured by fraud, as the Olahs alleged. *See Baldwin,* 765 S.W.2d at 512 ("The doctrine of merger does not operate to bar claims of fraud, accident, or mistake in transactions leading up to the deed."); *see also 1464–Eight, Ltd. v. Joppich,* 154 S.W.3d 101, 104 n. 1 (Tex.2004) (disapproving court of appeals cursory analysis that based on merger doctrine earnest money contract was superseded by documents executed at closing).

Rich responds that the Olahs never pleaded the merger doctrine as an affirmative defense. This Court has stated the failure to plead the merger doctrine waives the defense. *See Barnett v. Coppell N. Tex. Court, Ltd.,* 123 S.W.3d 804, 821 (Tex. App.-Dallas 2003, pet. denied) (party waived any error relating to defense of merger or parol evidence rule where he failed to plead the defenses). The record indicates the Olahs filed only a general denial of Rich's counterclaim for attorneys' fees under the contract. We reject the Olahs' arguments based on the merger doctrine.

We also reject the Olahs' argument that the trial court erred in finding the amount of Rich's appellate attorneys' fees by failing to condition those fees on a successful appeal. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190, 205 (Tex.App.-Austin 1992, no writ). The trial court did not award attorneys' fees in its judgment; it merely entered findings of fact as to the amount of reasonable attorneys' fees incurred through trial and for appeal. There was no error in making these findings.

We sustain Rich's sole issue. We reverse the trial court's failure to award her attorneys' fees under the contract. The Olahs do not challenge the finding of the amount of Rich's reasonable attorneys' fees and because she is successful on appeal, we render judgment for the reasonable attorneys' fees found by the trial court through trial and appeal to this Court. Tex.R.App. P. 43.2(c). We also render judgment for Rich's attorneys' fees in the supreme court as found by the trial court conditioned on her success in that court.

### CONCLUSION

We overrule the Olahs' two issues on their cross-appeal. We grant Rich's sole issue. We reverse that portion of the trial court's judgment refusing to award Rich reasonable attorney's fees under the contract and render judgment that Rich recover from the Olahs her reasonable attorneys' fees as found by the trial court for trial and appeal to this Court and conditional awards if she is successful in any appeal to the supreme court. In all other respects, we affirm the trial court's judgment.